### Ex parte LEE SOO.

(District Court, N. D. California, S. D. July 28, 1923.)

#### No. 17736.

1. **Aliens ⬥⟜32(13)—No review of determination of Board of Special Inquiry based on conflicting evidence.**

A determination of the Board of Special Inquiry based on conflicting evidence as to whether petitioner's father is a native-born American is not open to review by the District Court.

**2. Aliens ☞32(9)—That immigration officials' decision was against weight of evidence held not to show denial of fair hearing.**

A denial of a fair hearing cannot be established by a showing that the decision of the immigration officials was against the weight of the testimony.

**3. Aliens ☞32(9)—Person seeking admission to country for first time on ground that he is American citizen not entitled to judicial determination.**

While one lawfully within the United States claiming to be a citizen thereof may not be deprived of his right to be here by mere executive order, but is entitled to have the question of his asserted citizenship judicially determined before he can be removed, one who is seeking admission to this country for the first time has no such right, and the fact that his claim to admission is based on the asserted right of citizenship does not entitle him to a judicial determination of that question.

Habeas Corpus. Application for a writ on behalf of Lee Soo. Writ denied, and petition dismissed.

Lee Soo, admittedly born in China, applied for admission at the port of San Francisco as a son of one Lee Hing, also known as Lee Good Ming, alleged to be a native-born citizen of the United States, in the right given such an applicant by section 1993, R. S. (Comp. St. § 3947). His application was denied by the immigration authorities, and upon appeal to the Secretary of Labor the decision of the Board of Special Inquiry was affirmed and the appeal dismissed. Thereupon the present petition for habeas corpus to release the applicant from custody by the immigration authorities, in which he is held, was filed in his behalf. The petition is very general, consisting largely of allegations of conclusions; but by stipulation in open court the entire immigration records and files involved in the application were introduced as an amendment and supplement to the petition, to which petition, as thus amended, the government has demurred generally upon the ground that it presents no case in law or fact warranting the issuance of the writ.

The finding against the petitioner was based upon the conclusion reached by the immigration authorities that petitioner had failed to sustain the burden resting upon him of establishing the facts which would fix his status as that of a citizen of the United States under section 1993 aforesaid; that is, while the government did not seek to controvert the alleged fact that petitioner was the son of the Lee Hing above described, the conclusion was reached that the evidence was insufficient to show that the latter was, as claimed, a native-born citizen of the United States, and that consequently the rights assumed by petitioner as resulting from his relationship to the latter must fall to the ground. This conclusion resulted from the disclosure of the immigration records, made a part of the petition, that petitioner's alleged father had gotten his lines crossed and tangled up with another Lee Hing, also claiming to be a native-born citizen, in a manner to render it doubtful which of the two, if either, was such citizen; the claim of both being based partly at least on the same records.

The facts, briefly stated, are these: Petitioner's alleged father, on October 5, 1904, made an affidavit (XB, P5) setting forth that he was born in San Francisco in 1876 and was thereafter taken to China by his father in 1882, where he remained until 1899, when he returned to the United States on the S. S. Belgic, holding ticket No. 162, and on March 2, 1899 was duly landed as a native by the then collector of customs. This affidavit bore an indorsement showing that the affiant thereafter, on October 13, 1904, departed from the United States on the S. S. Mongolia, and attached to the record was an affidavit of one Henry C. Dibble, an attorney (XB, P4), to the effect that the person in whose behalf it was made was the same Lee Hing who was No. 162, returning on S. S. Belgic, November, 1898, who affiant claimed he represented at that time. This Lee Hing returned to this country on the S. S. Manchuria May 3, 1906 (XB, P3), and was landed

the following day by the then Commissioner. On this latter occasion one Inspector Gassaway, on May 13, 1906, made a report to the inspector in charge of the Chinese Bureau that: "In re case of Lee Hing No. 64 Manchuria, May 13, 1906. I have compared the inclosed photograph with that in file in his previous landing and find them to be one and the same person." It appears, however, from a comparison of the photograph of this Lee Hing, appearing at page 5 of Exhibit B, that the photograph attached to pages 5 and 12 of Exhibit C (being the photograph of the person previously admitted as No. 162 on the S. S. Belgic) was quite evidently that of a wholly different person. It further appeared that Lee Hing, the alleged father of the petitioner, subsequently made an application on October 21, 1912 (XB, P24) to the Commissioner of Immigration at Boston, Mass., for a native's return certificate, form 430, which was thereafter granted by the Commissioner of Immigration at Seattle, Wash., November 8, 1912, and that he departed from the latter port on the S. S. Minnesota, December 16, 1912; that he thereafter returned through the port of San Francisco on the S. S. Mongolia, June 1, 1915, and was admitted as a returning citizen (XB, P25), his photograph as he appeared at the latter date appearing at page 26, Exhibit B. But the record also discloses that on April 1, 1912, another Lee Hing (known also as Lee Ging Sing) made an application to the Commissioner at San Francisco for a native's return certificate, form 430 (XC, P35), which was granted, and he departed for China on the S. S. Mongolia, April 10, 1912. He returned on the S. S. Mongolia April 22, 1913, and was duly admitted on his certificate, as a native (XC, P36). This latter Lee Hing claimed to be the Lee Hing who had been admitted as No. 162 on the Belgic, November, 1898; and comparison of the photograph appearing on pages 5 and 10 of Exhibit C with that appearing on the application for a return certificate (XC, P35), and the photograph appearing at page 37 of the same record, tends strongly to confirm the correctness of his claim that he was the Lee Hing who was previously admitted as a native on March 2, 1899, by the then collector of customs.

From these facts it was deduced and found by the Board of Special Inquiry that this last-mentioned record of 1898 did not refer to the father of the petitioner, and it was accordingly found by them that the record did not sustain petitioner's contention as to the fact of his father's citizenship and the judgment of exclusion followed.

There are other facts bearing, more or less remotely, upon the question involved, but they are not essential to be stated.

George A. McGowan, of San Francisco, Cal., for petitioner.

John T. Williams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

VAN FLEET, District Judge (after stating the facts as above). The issuance of the writ is urged upon two grounds: (1) That petitioner was not accorded a fair hearing; and (2) that his right of admission being based upon his claim of citizenship, he is entitled as matter of right to have that claim judicially determined. Both contentions are based upon a misapprehension of the law.

[1, 2] 1. The first proposition is based upon the claim that the evidence preponderated so strongly in favor of petitioner's contention as to the status of his father that the adverse determination is itself evidence that the Board of Special Inquiry was actuated by bias and prejudice against petitioner and in and of itself discloses that the hearing was unfair. But it is not controverted that the record discloses a serious discrepancy, sufficient to raise a substantial conflict, on this essential feature of petitioner's case, and this being so, the question of fact involved was essentially one for the determination of

that Board and is not open to review by this court. And the fact, if it be a fact, that the evidence may have preponderated in favor of petitioner's contention, does not tend to show that the hearing was in any proper sense unfair or that the decision of the Board involved an abuse of discretion. White v. Chan Wy Sheung (C. C. A.) 270 Fed. 764. As there held:

"A denial of a fair hearing cannot be established by showing that the decision of the immigration officials was against the weight of the testimony. Chin Yow v. United States, 208 U. S. 8."

There is nothing in the record to bring the case within the doctrine of Kwock Jan Fat v. White, 253 U. S. 455, 40 Sup. Ct. 566, 64 L. Ed. 1010.

[3] 2. Nor does the fact that the petitioner's alleged right of admission is based upon his claim of citizenship entitle him, in such an instance as the present, to a judicial determination of that claim before he may be deported. While one lawfully within the United States, claiming to be a citizen thereof, may not competently be deprived of his right to be here by mere executive order, but is entitled to have the question of his asserted citizenship judicially determined before he may be removed (Ng Fung Ho v. White, 259 U. S. 276, 42 Sup. Ct. 492, 66 L. Ed. 938) no such right attaches to one who, like the petitioner, is seeking admission to the country for the first time, and the fact that his claim to admission may be based upon the asserted right of citizenship does not bring him within the category of those entitled to invoke the jurisdiction of our courts for the determination of that question (United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Tang Tun v. Edsell, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606).

The distinction is between the case of one lawfully within our borders defending his asserted right to remain, and one who, like petitioner, is in legal contemplation without our borders seeking to get in. In the latter case the rights of the applicant are controlled by the Immigration Act, Ng Fung Ho v. White, supra.

The writ is denied, and the petition will be dismissed.